SUPERIOR COURT
BARNSTABLE, SS

JUL 1 5 2021

**FILED**
*Scott W. Nickerson, Clerk*

COMMONWEALTH OF MASSACHUSETTS

BARNSTABLE, ss.

TRIAL COURT
SUPERIOR COURT DEPT.
NO. 2172 CV 21-255

---

PETER OLSON, individually and
derivatively on behalf of YOUNG
AMERICANS AGAINST SOCIALISM,
INC., an Illinois not for profit corporation,

    Plaintiff,

**COMPLAINT AND JURY DEMAND**

v.

MORGAN ZEGERS,
    Defendant

and

YOUNG AMERICANS AGAINST
SOCIALISM, INC., an Illinois not for profit
corporation,
    a nominal Defendant.

---

## I.    INTRODUCTION

1.    This is an action for breaches of contract, breaches of the covenant of good faith and fair dealing, breaches of fiduciary duties, breaches of confidentiality, embezzlement, defamation, tortious interference with advantageous business relations, extortion, violation of G. L. c. 272 § 99, and accounting brought by PETER OLSON ("Olson" or "Plaintiff"), individually, and derivatively on behalf of YOUNG AMERICANS AGAINST SOCIALISM, INC., a Illinois not for profit corporation ("YAAS"), against Defendant, MORGAN ZEGERS ("Zegers" or "Defendant"), and nominal Defendant, YAAS, and states as follows:

## II.     JURISDICTION AND VENUE

2.     This court has jurisdiction over the claims against Zegers pursuant to G. L. c. 223A, § 3.   Venue in this county is proper as at least one of the parties resides in Barnstable, Massachusetts, it is or has been a usual place of business for YAAS, it is the location of YAAS's last noticed meeting, and it is where one or more of the causes of action sought herein have occurred.

3.     This is an action brought by Olson individually, against Zegers for: (1) defamation – slander, (2) defamation – libel, (3) unauthorized recording of phone calls, and (4) tortious interference; as well as, derivatively on behalf of YAAS against Zegers for: (5) breach of agreement, (6) breach of fiduciary duties, (7) breach of confidentiality (8) tortious interference, (9) court-ordered inspection; (10) accounting; (11) determination of arbitrable issues; and (12) removal and injunctive relief

## III.     THE PARTIES

4.     YAAS is an Illinois not for profit corporation duly incorporated on June 19, 2019, by Olson and Zegers. At the time of incorporation, YAAS was actively operated by the parties from their residence located in Massachusetts. Upon information and belief, YAAS is currently operating in Kendall County, Texas.     A true and correct copy of YAAS's Articles of Incorporation is attached as **Exhibit 1.**

5.     Olson is an individual, *sui juris*, and a resident of Barnstable, Massachusetts. Olson is the co-founder, President and Chairman of the Board of Directors for Nominal Defendant, YAAS.

6.     Zegers is an individual, *sui juris*, believed to be residing in Kendall County, Texas. Zegers is a co-founder, Vice President, and member of the Board of Directors for YAAS.

7.      YAAS is governed by a self-perpetuating Board of Directors ("Board"). *See*,

Bylaws of Young Americans Against Socialism ("YAAS Bylaws"), attached as **Exhibit 2**.

8.      At the time of incorporation, YAAS appointed three directors to the initial Board.

The Board comprised of: Olson, Zegers, and Chris Zeller[1].

## IV.    RELEVANT FACTS

### A. <u>YAAS Governance</u>

9.      Contemporaneously with their appointment, the Board adopted and agreed to

abide by the Bylaws.

10.      The Bylaws set forth the duties, scopes of authority, and responsibilities, among

other things, for YAAS's directors, officers, and key employees.

11.      The Bylaws state that all directors are required to provide YAAS with the duties

of diligence, loyalty, and obedience.  Specifically, the Bylaws state, in relevant part, in *Article V*,

Section E:

> *1. Duty of Diligence*
>
> Directors ultimately hold full non-delegable responsibility
> for the Corporation's actions and well-being.  Directors are
> required to carry out their board responsibilities with
> careful attentiveness and dedication – attending meetings,
> actively participating in board deliberations, seeking
> outside counsel and guidance as appropriate; and ensuring
> that all state and federal taxes, registrations, returns, and
> other financial reports required under applicable laws are
> timely filed.
>
> *2. Duty of Loyalty*
>
> Directors must always act in the best interests of the
> Corporation.  This applies to not only decisions that involve

---

[1] *See*, "Exhibit A Addendum to Articles of Incorporation of Young Americans Against Socialism" attached to **Exhibit 1.**

their own personal or business loyalties, but also those of other key employees, directors, and officers involved in the corporation. Directors shall comply at all times with the Conflict of Interest Policy at Addendum A; and shall refrain from making non-program loans, gifts, or advances, to any person, except as permitted under the Act.

*3. Duty of Obedience*

Directors are required to ensure that the Corporation's activities adhere and conform to the religious, charitable, or educational purposes set forth in the Corporation's purpose statement at Article III above; and the utilize the assets of the Corporation for the best interest of the Corporation's beneficiaries. They are to avoid wasting charitable assets. This includes, but is not limited to incurring penalties, fines, and unnecessary taxes.

12.    Additionally, directors, officers, and key employees of YAAS must maintain and protect the confidentiality of YAAS's confidential information.

13.    The Bylaws define the information considered confidential in Article V, Section I, as:

[…] including donor and supporter lists and related records, fundraising strategies, financial information about the Corporation, organizational plans, marketing information, expense information, personnel matters, and all credentials used to access physical or digital media containing information related to the Corporation and any software or services owned, leased, subscribed to, or used by the Corporation for the Corporation's purposes [.]

14.    All actions and decisions by the Board are further bound by the Conflict of Interest Policy ("COI Policy") and Dispute Resolution Policy ("DR Policy") attached to the Bylaws, as Addendum A and Addendum B, respectively.

15.    The COI Policy provides additional regulations to protect YAAS's tax-exempt status when making business decisions involving persons with a special relationship with YAAS.

Specifically, the COI Policy states that directors have a responsibility to carry out YAAS business honestly and prudently, and of exercising the utmost good faith in all transactions, and that they shall not utilize their positions with YAAS, or knowledge obtained therefrom for improper private benefit.

16.    The DR Policy requires all disputes arising between directors, officers, executive staff, or committee members regarding the Bylaws or otherwise affecting YAAS to be submitted to mediation and arbitration.

17.    Specifically, the DR Policy, attached to the Bylaws as Addendum B, states:

> These methods shall be the sole legal remedy for any controversy or claim arising out of this Agreement. No party shall bring any dispute under these Bylaws to any court of law or chancery except to enforce a mediation agreement or arbitration decision and except as otherwise provided in the Confidentiality provision of the attached Bylaws ("Dispute Resolution Policy"). Notwithstanding anything to the contrary, this Dispute Resolution Policy shall be subject to the approval of any insurance carrier providing coverage for the Corporation.

18.    As discussed in further detail below, this action involves a mixture of issues, some fall under the Bylaws, others are wholly unrelated.

19.    The DR Policy is silent on the way disputes involving claims outside the arbitration provision are to be addressed.

20.    As the Board currently consists of Olson and Zegers only, Olson sent a demand letter to Zegers on July 2, 2021, demanding her resignation and turnover of all YAAS property and information, but Zegers has refused to comply, as she has repeatedly refused with similar demands in the past.

### B. Breakdown in the Boardroom

21.     Initially, YAAS experienced success in promoting its mission.

22.     YAAS established a social media presence through by disseminating videos intended to engage and educate young Americans about socialism and its true impacts.  Zegers was quickly decided as the "face" of YAAS, and appeared in most, if not all, of YAAS's videos.

23.     Without seeking Board approval, Zegers unilaterally relocated the business location of YAAS to Texas, denied Olson access to YAAS's accounts, books and records, and deleted Olson's YAAS email account, including evidence of Zegers's misconduct.

24.     Olson made multiple requests and demands for access to YAAS's books, records, bank accounts, and Olson's YAAS email account.

25.     Zegers flatly refused to provide Olson access to YAAS's books, records, bank accounts, and Olson's YAAS email account and explicitly embarked on a campaign to usurp YAAS and extricate Olson completely from its governance in direct violation of the Bylaws.

26.     In furtherance of this scheme, Zegers began making false and defamatory statements about Olson to third parties, including YAAS's employees, vendors, and advantageous business relationships.

27.     Upon information and belief, Zegers falsely told YAAS's employees, bookkeeper, and other business relationships that Olson committed corporate waste, submitted improper reimbursements, and was sexually harassing her.  Zegers also made the same false claims against Olson in an effort to create a false narrative as pretense to remove Olson from the Board, as a means of extortion, to usurp authority over YAAS.

28.     As a result of Zegers's false and defamatory statements, despite his position as President and Chairman of the Board, YAAS's bookkeeper refused to provide Olson access to

any of YAAS's accounts, books, or records and ultimately terminated the relationship with YAAS.

29.    Additionally, Zegers's statements and conduct caused the loss of YAAS's registered agent and attorneys, and lead to the resignation of YAAS's third director, Chris Zeller.

30.    As a result of the third director's resignation, Olson and Zegers are the only remaining directors on the Board jeopardizing YAAS's compliance with the rules and regulations governing its tax exemption status.

31.    Zegers, willfully, malicious, and with intent to harm or humiliate Olson, published posts to a public forum falsely stating that Olson was attacking her professionally and made a slanderous statement regarding Olson.

32.    Although Zegers has since deleted certain posts (thereby belying her culpability), the postings were permanently disseminated to the public.

### C. Breaches of Fiduciary Duties and Confidentiality

33.    Zegers was involved in the development of the Bylaws and was fully aware of the duties, responsibilities, and scope of authority delegated to her respective roles.

34.    As a director, Zegers owed the fiduciary duties of diligence, loyalty, and obedience to YAAS.

35.    As a director and officer, Zegers agreed to maintain the confidentiality of YAAS's information, as defined *supra*.

36.    Zegers was aware that she did not have authority to act alone without authorization by the Board.

37.     Nonetheless, Zegers knowingly and willfully breached her fiduciary duties to YAAS and violated her responsibility to maintain confidentiality of YAAS's information. through her false and malicious statements made, and wrongful actions taken, against Olson.

38.     Zegers has breached her fiduciary duties, and other obligations under the Bylaws, through her actions, including, but not necessarily limited to:

       a.     Utilizing YAAS's social media accounts to promote her private endeavors, including personal and/or business loyalties, to the detriment of YAAS.

       b.     Failing to attend properly noticed Board meetings causing the Board to fall out of compliance with its Bylaws and other applicable laws.

       c.     Deleting Olson's access to his email account due to her personal animosity towards Olson and to the detriment of YAAS.

       d.     Blocking Olson's access to YAAS's financial accounts without authority to do so.

       e.     Opening financial accounts in the name of YAAS without authority to do so.

       f.     Applying for incorporation of YAAS in Texas without authority to do so.

       g.     Refusing to permit inspection of YAAS's books and records.

       h.     Subsidizing a portion of the rent on her apartment with YAAS funds.

       i.     Making false and defamatory statements concerning YAAS's officer and director without regard to YAAS's best interests.

j.      Publishing inappropriate content to YAAS's social media accounts.

k.      Disclosing YAAS's confidential information regarding internal disputes, financial information, and fundraising strategies.

l.      Accepting employment with a competing organization and utilizing YAAS's confidential information to further the competing organization to the detriment of YAAS.

39.    Upon information and belief, Zegers has driven YAAS into insolvency through her bad conduct outlined, *supra*, and mismanagement of YAAS.

40.    As a result of her bad conduct and mismanagement, Zegers has subjected YAAS to the risk of losing its non-profit tax exemption status.

41.    Furthermore, Zegers's conduct within the organization and in the public sphere has resulted in irreparable reputational damage to YAAS, due in part to her unrelenting mission to harm Olson and his reputation without any regard for YAAS.

42.    As discussed above, Zegers was the "face" of YAAS by virtue of appearing in the majority of YAAS's video content.

43.    Zegers frequently tagged her personal social media accounts on content posted to YAAS's account, and regularly shared YAAS's content on her own accounts. As a natural result, Zegers's personal accounts became so intertwined such that they were viewed as an extension of YAAS causing many of YAAS's supporters to follow Zegers's personal accounts.

44.    Despite her knowledge that various prominent members of Congress and other influential YAAS supporters followed her personal social media accounts, Zegers has published numerous videos and other content reflecting inappropriate behavior inconsistent with YAAS's

values and mission. In one instance, Zegers posted a video to her Instagram that shows Zegers participating in what appears to be a reenactment of the introduction to a pornographic film.

45.     Upon information and belief, this sort of inappropriate behavior on social media has resulted in prominent organizations and/or political figures to cut ties with YAAS, including but not limited to Liberty University's Falkirk Center.

46.     Zegers has also used YAAS's platform to promote herself and other business ventures in violation of the COI Policy and to the detriment of YAAS.

47.     Olson has employed the law firms of Pidani Law, PLLC, and Nardella & Nardella, PLLC, and is obligated to pay the attorneys a reasonable fee for their services in bringing this action against Zegers.

48.     Olson is entitled to recover his legal fees and costs from Zegers pursuant to the Bylaws and other applicable law.

49.     All conditions precedent to the relief requested herein have been performed or have occurred.

## V.     INDIVIDUAL CAUSES OF ACTION

### COUNT I
### Defamation - Slander

50.     Olson realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

51.     Zegers has made numerous false and misleading statements intended to defame the reputation of Olson and to harm his professional opportunities and relationships.

52.     The defamatory statements made by Zegers did in fact cause injury to Olson's reputation.

53.     The false and slanderous statements impugned Olson's character and integrity in his profession and falsely accused Olson of criminal offenses, including but not limited to sexual harassment and corporate fraud, all constituting defamation per se.

54.     As a direct and proximate cause of Zegers's conduct, Olson has suffered and continues to suffer damages as well as irreparable harm to his reputation.

WHEREFORE, Plaintiff, individually, requests that this Court enter judgment against Zegers, for damages, pre- and post-judgment interest, costs, and all other relief this Court deems just and proper.

## COUNT II
### Defamation – Libel

55.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 54, above as though fully set forth herein.

56.     Zegers willfully, intentionally, and/or maliciously published at least two false statements to the public concerning Olson with the intent to embarrass, humiliate, and harm him and/or his reputation.

57.     Specifically, Zegers published at least two posts on Twitter that Olson was a "small pp beta male" that had "threatened" and "attacked" her because she turned him down. These statements are false and defamatory per se.

58.     Zegers acted with reckless disregard for the truth and/or with the knowledge that the statements she made were false and defamatory.

59.     The timing, content, and context of the statements made it clear and obvious that the statements were being made about Olson.  Specifically, several third parties contacted Olson regarding the posts that they immediately knew was in reference to Olson and/or the ongoing dispute between Olson and Zegers.

60. As a result of Zegers's publication to Twitter, the false statements were published to tens of thousands of individuals and disseminated further through retweets, or reposting.

61. The slander and libel impugned Olson's character and integrity in his profession and was tailored in such a way to insinuate Olson engaged in sexual harassment, all constituting defamation per se.

62. As a direct and proximate cause of the false and misleading statements made by Zegers, Olson has suffered and continues to suffer damages in an amount to be determined at trial.

63. As a direct and proximate cause of Zegers's false and misleading statements, Olson has suffered, and continues to suffer, damages in an amount to be determined at trial due to the injury to his reputation and the humiliation.

WHEREFORE, Plaintiff, individually, requests that this Court enter judgment against Zegers, for damages, pre- and post-judgment interest, costs, and all other relief this Court deems just and proper.

### COUNT III
### Violation of G. L. c. 272 § 99

64. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

65. By surreptitious and unauthorized recording of telephone conversations with Olson, Zegers violated the provisions of G. L. c. 272 § 99(Q).

66. Zegers recorded telephone conversations between her and Olson while he was a resident of, and physically present within, Barnstable County, Massachusetts.

67.     As a result of such violations, Zegers is liable for actual damages but not less than liquidated damages computed at a rate of $100 per day for each day of violation or $1000, whichever is greater; punitive damages; and attorneys' fees and expenses.

WHEREFORE, Plaintiff, individually, requests that this Court enter judgment against Zegers, for actual damages but not less than liquidated damages computed at a rate of $100 per day for each day of violation, or $1,000, whichever is greater; punitive damages; and attorneys' fees and costs.

## COUNT IV
### Tortious Interference

68.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

69.     Olson has developed and cultivated numerous advantageous relationships with prominent political figures and organizations over the years.

70.     Zegers knew about the existence and nature of Olson's advantageous relationships by virtue of being co-founder and director of YAAS, along with Olson, as well as, having an intimate relationship with Olson.

71.     Zegers knew that maintenance of these relationships was necessary and essential to Olson's continued career in politics.

72.     Zegers willfully, knowingly, and improperly interfered with Olson's advantageous relationships by making false and defamatory statements about Olson; and publishing slanderous statements to a public forum alleging that Olson has "attacked" her professional career due to the Zegers's rejection of Olson's alleged advances.

73.     As a direct and proximate result of Zegers's conduct, Olson has lost advantageous relationships and business opportunities due to the nature of the statements made by Zegers.

74.     As a direct and proximate result of Zegers's conduct, Olson, individually, has suffered damages.

WHEREFORE, Plaintiff, individually, requests entry of judgment against Zegers, for damages, pre- and post-judgment interest, costs, and all other relief this Court deems just and proper.

## VI.     DERIVATIVE CAUSES OF ACTION

### COUNT V
### Breach of Agreement (YAAS Bylaws)

75.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

76.      This is an action by Plaintiff on behalf of YAAS against Zegers for breach of the Bylaws.

77.     The Bylaws constitutes a valid and binding agreement between YAAS and Zegers.

78.     Zegers breached the Bylaws with YAAS through her conduct and actions, including but not limited to, those delineated in Paragraphs 38 (a) through (l) and 39, supra.

79.     As a direct and proximate result of Zegers's breach of the Bylaws, YAAS has suffered damages.

WHEREFORE, Plaintiff, on behalf of YAAS, demands judgment against Zegers, for damages, pre-and post-judgment interest, costs, and all other relief this Court deems just and proper.

## COUNT VI
### Breach of Fiduciary Duties
### (Diligence, Loyalty, Obedience)

80.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

81.     This is an action for breach of fiduciary duties and for damages against Zegers.

82.     As a director and officer, Zegers owes fiduciary duties to YAAS.

83.     Furthermore, the Bylaws provide that all directors owe to YAAS the duties of diligence, loyalty, and obedience.

84.     Zegers breached her fiduciary duties owed to YAAS by committing the actions, including, but not limited to, those discussed in Paragraphs 38 (all subparts) and 39, supra.

85.     Zegers's acts have amounted to the commission of serious breaches of diligence, loyalty, and obedience which demonstrate that she is unwilling or unable and is failing or refusing to fulfill her duties and responsibilities to YAAS in good faith.

86.     As a direct and proximate result of Zegers's actions, YAAS has suffered and is continuing to suffer damages.

WHEREFORE, Plaintiff requests this Court enter judgment against Zegers for all damages incurred by Plaintiff and YAAS as a result of this cause of action, including attorneys' fees and costs, and for such further relief this Court deems just and proper.

## COUNT VII
### Breach of Confidentiality Agreement

87.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

88.     As part of their fiduciary duties owed to YAAS, all officers and directors are expected to maintain appropriate confidentiality of information related to YAAS. Article V, Section I of the Bylaws defines information related to YAAS, as:

> [D]onor and supporter lists and related records, fundraising strategies, financial information about the Corporation, organizational plans, marketing information, expense information, personnel matters, and all credentials used to access physical or digital media containing information related to the Corporation for the Corporation's purposes, including but not limited to, computer login identification and passwords, email login identification and passwords, serial numbers or software keys for local copies of software, and cloud-based services login identification and passwords, and to prevent unauthorized disclosure to any outside party[.]

89.     As an officer and director of YAAS, Zegers agreed to maintain the confidentiality of YAAS's information.

90.     Through her disclosure of information related to YAAS, including but not limited to, financial information, expense information, marketing information, and personnel matters, Zegers has breached the confidentiality provision.

91.     As a direct and proximate result of Zegers's breach of the confidentiality provision, YAAS has suffered damages.

92.     Pursuant to the Bylaws, YAAS may enforce this provision and it shall be entitled to recover attorneys' fees and costs against the breaching party.

WHEREFORE, Plaintiff, on behalf of YAAS, requests entry of judgment against Zegers, for damages, pre- and post-judgment interest, costs, and all other relief this Court deems just and proper.

## COUNT VIII
## <u>Tortious Interference</u>

93.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

94.     YAAS has developed and cultivated advantageous business relationship with numerous prominent figures and organizations in the political arena since its inception in 2019.

95.     YAAS's mission is to promote the education of younger Americans of various economic models to expose the true failings of socialism in order to prevent its glorification by future generations.

96.     Zegers knew about the existence and nature of YAAS's various relationships with political figures and influential organizations.

97.     Zegers knew that maintenance of these relationships was necessary and essential to YAAS's core mission.

98.     Zegers willfully, knowingly, and improperly interfered with YAAS's advantageous business relationships by publishing or causing to publish material adverse to YAAS's mission and purpose, disclosing YAAS's financial information, strategies, financial stability, intraoffice matters, and other confidential information.

99.     As a direct and proximate result of Zegers's conduct, YAAS has lost its advantageous business relationships with several prominent figures and organizations, including but not limited to, Liberty University's Falkirk Center.

100.    As a direct and proximate result of Zegers's conduct, YAAS has suffered damages.

WHEREFORE, Plaintiff, on behalf of YAAS, requests entry of judgment against Zegers, for damages, pre- and post-judgment interest, costs, and all other relief this Court deems just and proper.

## COUNT IX
## Court-Ordered Inspection

101.    Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

102.    As discussed above, Plaintiff has made multiple, written demands to inspect and copy YAAS's books and records.

103.    Plaintiff's request is reasonably related to his interest, rights, and duties as an officer and director of YAAS, and has not been made for an improper purpose.

104.    Zegers has removed all YAAS's corporate records from the principal place of business to an undisclosed location in Texas without authority to do so.

105.    Upon information and belief, Zegers has opened financial accounts in YAAS's name without authority to do so.

106.    Zegers has wrongfully denied Olson access to YAAS's corporate records and has taken actions to cut off any and all of Olson's access to YAAS and/or its related accounts.

107.    Under the Bylaws, YAAS is required to maintain all of its corporate records and to make those records available for inspection when requested by YAAS's Board, officers, or committee members.

108.    Because Zegers has continually refused to honor Olson's lawful requests for access to YAAS's books and records, Plaintiff has been forced to retain counsel and has incurred certain costs in seeking to enforce this right.

WHEREFORE, Plaintiff requests this Court entered an Order compelling Zegers to provide Plaintiff access to inspect and copy the books and records of YAAS, for an award of Plaintiff's attorneys' fees and costs; and for such other and further relief this Court deems just and proper.

## COUNT X
### Accounting

109.   Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

110.   This is an action for accounting arising out of a fiduciary relationship between the parties.

111.   At all material times, Zegers owed a fiduciary duty to YAAS, as an officer and director.

112.   Because YAAS's corporate records have been secreted away by Zegers to an undisclosed location in Texas and her absolute refusal to provide access, an accounting is required to determine the true condition of YAAS in order to determine the true amount of damages incurred by Plaintiff and YAAS as a result of Zegers's wrongful actions.

WHEREFORE, Plaintiff, on behalf of YAAS, requests that this Court enter an order requiring Zegers to provide an accounting of the financial affairs of YAAS for January 1, 2019, through present, require Zegers to make restitution to YAAS for any and all debts and/or monies revealed to have been wrongfully taken or used by Zegers, and grant such other and further relief as this Court deems just and proper.

## COUNT XI
### Declaratory Action
### Violation of COI Policy and Injunctive Relief against Defendant

113.    Plaintiff realleges and incorporates the allegations of paragraphs 1 through 49, above as though fully set forth herein.

114.    This is an action for declaratory judgment to declare Zegers in violation of the COI Policy and for injunctive relief.

115.    Zegers, as a director and officer of YAAS, agreed to adhere to YAAS's Bylaws, which include and incorporate the COI Policy.

116.    Throughout the COI Policy, Zegers agreed to exercise the utmost good faith in all transactions involved in her duties, and that she would not utilize her position with YAAS, or knowledge gained from YAAS for improper private benefit.

117.    Zegers agreed that she would place YAAS's interests over all others in each of her decisions and actions.

118.    Zegers has breached the restrictions in the Bylaws and the COI Policy by the breaches and wrongful conduct discussed above in Paragraphs 38 (a) – (l).

119.    Upon information and belief, Zegers breaches and mismanagement caused the depletion of YAAS's assets driving YAAS into insolvency.

120.    As a direct result of Zegers wrongful conduct, YAAS's tax exempt status has been jeopardized.

121.    The Plaintiff, on behalf of YAAS, is likely to prevail on its breach of agreement claims because (1) the Bylaws and COI Policy are enforceable, binding agreements between YAAS and its directors, including, Defendant, (2) Defendant has breached the terms of the COI Policy, and (3) YAAS has suffered and will continue to suffer damages as a result of the breaches.

122.   YAAS will continue to suffer irreparable harm unless Zegers is enjoined from any further participation in YAAS and is immediately removed from its Board.

123.   Plaintiff is entitled to injunctive relief against Zegers because there is no adequate remedy at law.

WHEREFORE, Plaintiff respectfully request that this Court enter a preliminary and permanent injunction enjoining and restraining Zegers from participating in the governance of YAAS in any capacity, requiring the removal of Zegers as a director and officer of YAAS, and her immediate turnover all of YAAS's accounts, books, records, and means of access to each to Plaintiff; award Plaintiff damages; and, for any other relief this Court deems just and proper.

## COUNT XII
### Declaratory Action to Determine Scope and Enforceability of Arbitration Provision

124.   Plaintiff realleges and incorporates the allegations of paragraphs 1 through 123, above as though fully set forth herein.

125.   This is an action for declaratory judgment to determine the scope and enforceability of the arbitration provisions in the DR Policy.

126.   The Bylaws contain a DR Policy that is vague and ambiguous as to its scope yet impermissibly restricts the right to sue on any claim within that vague and ambiguous scope.

127.   Olson is in doubt regarding the rights and remedies of the parties with respect to the DR Policy and its scope and enforceability.

128.   Olson believes and contends that some, if not all, of the causes of action brought herein are not subject to the arbitration provision and that the scope of arbitrable issues must be determined by the Court.

129.    Olson further believes this Court should decide all causes of action brought herein to avoid duplicative and unnecessary expense and resources, and contrary results, in prosecuting claims regarding same or overlapping sets of facts and legal issues in two different forums.

130.    Article II of the DR Policy requires submission to arbitration following an impasse at mediation, but it is silent as to the procedure for determining the scope of arbitrable issues.

131.    The parties have already conducted mediation of some, but not all, of the claims alleged herein and an impasse was reached.

132.    The language of the arbitration clause is over general and ambiguous such that the parties are uncertain of the scope of the arbitration provision.

133.    There is a bone fide, actual, present, and practical need for the determination of arbitrability of the causes of action herein.

134.    The declaration sought involves a present, ascertainable state of facts ripe for adjudication.

135.    The Parties' rights are dependent upon the resolution of this controversy, if declaratory relief is not granted as requested, the Parties will suffer irreparable harm.

136.    Olson, Zegers, and YAAS are the only parties who hold any interest in the outcome of this action.

137.    There is no adequate remedy at law to determine the proper scope of arbitrability.

WHEREFORE, Plaintiff requests that, in accordance with G. L. c. 231A, §§ 1-2, this Court determine which causes of action raised herein are subject to binding arbitration, enter an Order compelling those causes of action to arbitration, retaining jurisdiction over all matters in

order to enforce any awards or sanctions, and such further relief this Court deems just and proper.

### Jury Demand

Pursuant to Mass. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on every count so triable.

DATED: July 14, 2021.

Respectfully submitted,

Seena A. Pidani, Esq.
BBO No. 688886
**PIDANI LAW, PC**
154 Maverick St, Suite 208
Boston, MA 02128 | (781) 773-8868
sap@pidanilaw.com

*Co-counsel for Plaintiff*

AND

Jonathan M. Sykes, Esq.*
Florida Bar No. 73176
Juliane M. Brumbaugh, Esq.*
Florida Bar No. 113366
**NARDELLA & NARDELLA, PLLC**
135 W. Central Blvd., Suite 300
Orlando, FL 32801 | (407) 966-2680
jsykes@nardellalaw.com
jbrumbaugh@nardellalaw.com
service@nardellalaw.com

*\* Pending Pro Hac Vice Admission*

*Co-counsel for Plaintiff*

# EXHIBIT 1

FORM **NFP 102.10** (rev. Dec. 2003)
**ARTICLES OF INCORPORATION**
General Not For Profit Corporation Act

Secretary of State
Department of Business Services
501 S. Second St., Rm. 350
Springfield, IL 62756
217-782-9522
www.cyberdriveillinois.com

Remit payment in the form of a
cashier's check, certified check,
money order or Illinois attorney's
or C.P.A.'s check payable
to Secretary of State.



RECEIVED
JUN 19 2019
JESSE WHITE
SECRETARY OF STATE

_____ File #_____   Filing Fee: $50   Approved: _____

———— Submit in duplicate ———— Type or Print clearly in black ink ———— Do not write above this line ————

**Article 1.**
Corporate Name: _____ Young Americans Against Socialism _____

**Article 2.**
Name and Address of Registered Agent and Registered Office in Illinois:

Registered Agent: _____ Wagenmaker & Oberly, LLC _____
                          First Name                    Middle Name                      Last Name

Registered Office: _____ 53 _____ W Jackson Blvd _____ Suite 1734 _____
                          Number                          Street                 Suite # (P.O. Box alone is unacceptable)

                        Chicago _____ IL _____ 60604 _____ Cook _____
                          City                       ZIP Code                    County

**Article 3.**
The first Board of Directors shall be _____ three _____ in number, their Names and Addresses being as follows
                                         Not less than three

| Director Name | Street Address | City | State | ZIP Code |
|---|---|---|---|---|
| Morgan Zegers | 505 Congress St Unit 1109 | Boston | MA | 02210 |
| Peter Olson | 505 Congress St Unit 1109 | Boston | MA | 02210 |
| Chris Zeller | 210 Woodland Street | South Glastonbury | CT | 06073 |

**Article 4.**
Purpose(s) for which the Corporation is organized:

See attached Exhibit A.

(continued on back)

Printed by authority of the State of Illinois. August 2015 - 1 - C 157.17

**Article 4.(continued)**
Is this Corporation a Condominium Association as established under the Condominium Property Act? (check one)
☐ Yes   ☑ No

Is this Corporation a Cooperative Housing Corporation as defined in Section 216 of the Internal Revenue Code of 1954?
(check one)
☐ Yes   ☑ No

Is this Corporation a Homeowner's Association, which administers a common-interest community as defined in subsection
(c) of Section 9-102 of the code of Civil Procedure? (check one)
☐ Yes   ☑ No

**Article 5.**
Other provisions (For more space, attach additional sheets of this size.):     See attached Exhibit A.

**Article 6.**
**Names & Addresses of Incorporators**
The undersigned incorporator(s) hereby declare(s), under penalties of perjury, that the statements made in the foregoing Articles
of Incorporation are true.

Dated _____June 19_____, _2019_
        Month  Day              Year

| Signatures and Names | Post Office Address |
|---|---|
| 1. _____ | 1. ___53 W. Jackson Blvd., Suite 1734___ |
|      Signature |        Street |
| ___Sally R. Wagenmaker___ | ___Chicago, IL 60604___ |
|      Name (print) |        City, State, ZIP |
| 2. _____ | 2. _____ |
|      Signature |        Street |
| _____ | _____ |
|      Name (print) |        City, State, ZIP |
| 3. _____ | 3. _____ |
|      Signature |        Street |
| _____ | _____ |
|      Name (print) |        City, State, ZIP |

**Signatures must be in BLACK INK on the original document.**
**Carbon copies, photocopies or rubber stamped signatures may only be used on the duplicate copy.**

- If a corporation acts as incorporator, the name of the corporation and the state of incorporation shall be shown and the execution shall be by a duly authorized corporate officer. Please print name and title beneath the officer's signature.
- The registered agent cannot be the corporation itself.
- The registered agent may be an individual, resident in Illinois, or a domestic or foreign corporation, authorized to act as a registered agent.
- The registered office may be, but need not be, the same as its principal office.
- A corporation that is to function as a club, as defined in Section 1-3.24 of the "Liquor Control Act" of 1934, must insert in its purpose clause a statement that **it will comply with the State and local laws and ordinances relating to alcoholic liquors.**

Return to:

| Wagenmaker & Oberly, LLC | Sally R. Wagenmaker |
|---|---|
|        Firm Name |        Attention |
| 53 W. Jackson Blvd., Suite 1734 | Chicago, IL 60604 |
|        Mailing address |        City, State, ZIP |

**EXHIBIT A**
**ADDENDUM TO ARTICLES OF INCORPORATION OF**
**YOUNG AMERICANS AGAINST SOCIALISM**

**Article 4.      Purposes**

Young Americans Against Socialism is organized and operated for charitable and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. More specifically, the Corporation is dedicated to exposing the truth of socialism's failures to younger Americans on a nonpartisan basis, helping them to think intelligently about economic systems, reaching them through social media and other educational outreach, and thereby combatting current problems associated with cultural acceptance of socialism for future generations.

**Article 5.      Limitations of Corporate Authority**

a.  The Corporation, being organized exclusively for charitable and educational purposes, may make distributions to organizations and individuals in furtherance of its corporate purposes and in accordance with Section 501(c)(3) of the Code. Under no circumstances shall the Corporation make any distributions that are inconsistent with its purpose statement above.

b.  No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to its members, directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article 4 above. Furthermore, all distributions, if any, shall be made in full accordance with the USA Patriot Act of 2001, P.L. 107-56, 115 Stat. 272 (or a corresponding provision of any future federal or state law concerning antiterrorism).

c.  No substantial part of the activities of the Corporation shall be to attempt to influence legislation by propaganda or otherwise, and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of (or in opposition to) any candidate for public office.

d.  Notwithstanding any other provision of these articles, the Corporation shall not carry on any other activities not permitted to be carried on (1) by a corporation exempt from federal income tax under Section 501(c)(3) of the Code or (2) by a corporation, contributions to which are deductible under Section 170(c)(2) of the Code.

e.  Upon dissolution of the Corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the Corporation, dispose of all of the assets of the Corporation, exclusively for the purposes of the Corporation in such manner, or to such organization(s) organized and operated exclusively for charitable and educational purposes, as shall at the time qualify as an exempt organization(s) under Section 501(c)(3) of the Code, as the Board of Directors shall determine. Any such assets not so disposed of shall be disposed of by the appropriate court of law of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization(s), as said court shall determine, which are organized and operated exclusively for exempt purposes.

# EXHIBIT 2

# BYLAWS

## *of*

# Young Americans Against Socialism

**As Duly Adopted by the Board of Directors**
this _____ day of _____, _____

**With Conflict of Interest and Dispute Resolution Policies**

PREPARED BY
WAGENMAKER & OBERLY, LLC

# TABLE OF CONTENTS

Article I. Definitions ................................................................................................. 5

Article II. Corporate Offices ..................................................................................... 5

Article III. Corporate Purposes ................................................................................ 5

Article IV. Membership ............................................................................................ 5

Article V. Board of Directors .................................................................................... 5

    Section A. General Powers ..................................................................................... 5

    Section B. Number and Tenure ............................................................................... 6

    Section C. Qualifications ........................................................................................ 6

    Section D. Election ................................................................................................. 6

    Section E. Fiduciary Duties .................................................................................... 6

    Section F. Resignation and Removal ...................................................................... 7

    Section G. Vacancies ............................................................................................. 7

    Section H. Compensation ....................................................................................... 7

    Section I. Confidentiality ....................................................................................... 7

Article VI. Meetings of the Board of Directors ........................................................ 8

    Section A. Annual Meeting .................................................................................... 8

    Section B. Special Meeting .................................................................................... 8

    Section C. Notice ................................................................................................... 8

    Section D. Quorum ................................................................................................ 9

    Section E. Manner of Acting ................................................................................. 9

    Section F. Telephone Meeting ............................................................................... 9

    Section G. Action Without a Meeting .................................................................... 9

Article VII. Committees ............................................................................................ 10

    Section A. Appointment of Committees and Committee Members ........................ 10

Section B. Committees with Corporate Authority ................................................................ 10

Section C. Committees Without Corporate Authority ......................................................... 10

Section D. Committee Meetings ......................................................................................... 10

Section E. Resignation and Removal .................................................................................. 10

Section F. Quorum and Manner of Acting .......................................................................... 11

Article VIII. Officers and Agents .......................................................................................... 11

Section A. Officers ............................................................................................................. 11

Section B. Election and Term of Office .............................................................................. 11

Section C. President ............................................................................................................ 11

Section D. Vice-President ................................................................................................... 11

Section E. Secretary ........................................................................................................... 12

Section F. Treasurer ........................................................................................................... 12

Section G. Delegation of Authority .................................................................................... 12

Section H. Removal ............................................................................................................ 12

Article IX. Financial Policies ................................................................................................ 12

Section A. Fiscal Year ........................................................................................................ 12

Section B. Sale of Assets .................................................................................................... 13

Section C. Contracts ........................................................................................................... 13

Section D. Loans ................................................................................................................ 13

Section E. Checks, Drafts, Etc. .......................................................................................... 13

Section F. Deposits ............................................................................................................. 13

Section G. Gifts .................................................................................................................. 13

Article X. Indemnification of Directors and Officers ........................................................... 13

Article XI. Corporate Limitations ......................................................................................... 14

Section A. Distributions ..................................................................................................... 14

Section B. Prohibition Against Private Benefit and Inurement ................................................. 14

Section C. Political Activity ........................................................................................................ 14

Section D. Other Prohibitions ..................................................................................................... 14

Section E. Dissolution.................................................................................................................. 15

Article XII. Miscellaneous.............................................................................................................. 15

Section A. Books and Records..................................................................................................... 15

Section B. Amendments............................................................................................................... 15

Section C. Corporate Acquisition, Consolidation, Merger, or Dissolution ............................... 15

Section D. Conflict of Interest Policy ......................................................................................... 15

Section E. Dispute Resolution Policy ......................................................................................... 15

Section F. Waiver or Reduction of Fees ..................................................................................... 16

Section G. Seal............................................................................................................................. 16

Section H. Inconsistencies with Articles of Incorporation ........................................................ 16

Section I. Severability ................................................................................................................. 16

Certification of Adoption of Bylaws................................................................................................ 17

Addendum A. Conflict of Interest Policy ........................................................................................ 18

Addendum B. Dispute Resolution Policy ........................................................................................ 21

# BYLAWS
## OF
## YOUNG AMERICANS AGAINST SOCIALISM

## ARTICLE I. DEFINITIONS

The following terms used in these bylaws shall have the meanings set forth below.

1. "Act" means the Illinois General Not for Profit Corporation Act of 1986, as amended.
2. "Corporation" means Young Americans Against Socialism, an Illinois not-for-profit corporation.

## ARTICLE II. CORPORATE OFFICES

The Corporation shall continuously maintain in the State of Illinois a registered office and a registered agent whose office is identical with such registered office. The Corporation may have other offices within or without the state and need not be identical with the principal office in the State of Illinois. The address of the registered office and registered agent may be changed from time to time by the Board of Directors.

## ARTICLE III. CORPORATE PURPOSES

As set forth in the Articles of Incorporation, the Corporation is organized and operated exclusively for charitable and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986 (or a corresponding provision of any future United States Internal Revenue law, referred to below as the "Code"). More specifically, the Corporation is dedicated to exposing the truth of socialism's failures to younger Americans on a nonpartisan basis, helping them to think intelligently about economic systems, reaching them through social media and other educational outreach, and thereby combatting current problems associated with cultural acceptance of socialism for future generations.

## ARTICLE IV. MEMBERSHIP

There shall be no members of the Corporation, and the organization shall be governed by a self-perpetuating Board of Directors.

## ARTICLE V. BOARD OF DIRECTORS

**Section A. General Powers**

The affairs, business, and all legal matters of the Corporation shall be managed by its Board of Directors.

**Section B. Number and Tenure**

The Board of Directors shall be composed of three (3) directors and may be increased to eight (8), without amending the bylaws, by a resolution of the Board of Directors. The Board of Directors may from time to time, by amendment of these bylaws, change the minimum and maximum number of directors, but in no case shall the number be less than three (3).

Each director shall hold office for a term of three (3) years unless the Board shall expressly resolve to elect a director for a different term. Director's terms shall be staggered so that approximately one-third of the director seats are up for election at each annual meeting of the Board. Directors may serve unlimited terms, and each such director shall hold office until his or her successor has been elected and qualified.

**Section C. Qualifications**

Those who seek to be directors of the Corporation must personally affirm the Corporation's statement of purpose, must abide in all respects with the corporate policies set forth in these bylaws, and must characterize personal commitment to the values of the Corporation.

**Section D. Election**

Directors shall be elected at the annual meeting of the Board by a majority vote, or otherwise as set forth below in Section G. Each director shall hold office until the first of the following to occur: until his or her successor shall have been duly elected and shall have qualified; until his or her death or disability; until he or she shall resign in writing; or until he or she shall have been removed in the manner hereinafter provided.

**Section E. Fiduciary Duties**

Directors are legally required to fulfill the following fiduciary duties to the Corporation:

*1. Duty of Diligence*

Directors ultimately hold full non-delegable responsibility for the Corporation's actions and well-being. Directors are required to carry out their board responsibilities with careful attentiveness and dedication – attending meetings, actively participating in board deliberations, seeking outside counsel and guidance as appropriate; and ensuring that all state and federal taxes, registrations, returns, and other financial reports required under applicable laws are timely filed.

*2. Duty of Loyalty*

Directors must always act in the best interests of the Corporation. This applies to not only decisions that involve their own personal or business loyalties, but also those of other key employees, directors, and officers involved in the Corporation. Directors shall comply at all times with the Conflict of Interest Policy at Addendum A; and shall refrain from making non-program loans, gifts, or advances to any person, except as permitted under the Act.

*3. Duty of Obedience*

Directors are required to ensure that the Corporation's activities adhere and conform to the religious, charitable, or educational purposes set forth in the Corporation's purpose statement at Article III above; and to utilize the assets of the Corporation for the best interest of the Corporation's beneficiaries. They are to avoid wasting charitable assets. This includes, but is not limited to incurring penalties, fines, and unnecessary taxes.

## Section F. Resignation and Removal

Any director may resign at any time by giving written notice to the President of the Corporation. Such resignation, which may or may not be made contingent on formal acceptance, shall take effect on the date of receipt or at any later time specified therein. Any director may be removed with or without cause at any time by resolution adopted by a majority of the Board.

## Section G. Vacancies

Any vacancy occurring in the Board of Directors to be filled by reason of any increase in the number of directors or resignation or termination of a director shall be filled by the Board of Directors as soon as is practicable. A director so elected to fill a vacancy may be elected for the unexpired term of his or her predecessor in office.

## Section H. Compensation

Directors may receive compensation for their services, provided that the Board complies with its Conflict of Interest Policy.  In addition, expenses of attendance, if any, may be reimbursed for each regular or special meeting of the Board of Directors, provided that nothing herein contained shall be construed to preclude any directors from serving the Corporation in any other capacity and receiving reasonable compensation therefor.

## Section I. Confidentiality

As part of their fiduciary duties owed to the Corporation, all directors, officers, and key employees of the Corporation are expected to maintain appropriate confidentiality of information related to the Corporation, including donor and supporter lists and related records, fundraising strategies, financial information about the Corporation, organizational plans, marketing information, expense information, personnel matters, and all credentials used to access physical or digital media containing information related to the Corporation and any software or services owned, leased, subscribed to, or used by the Corporation for the Corporation's purposes, including, but not limited to, computer login identification and passwords, email login identification and passwords, serial numbers or software keys for local copies of software, and cloud-based services login identification and passwords,   and to prevent unauthorized disclosure to any outside party, except to the extent such information is otherwise disclosed in accordance with the ordinary course of business to the public or third parties or otherwise is required to be disclosed under applicable law. Such confidentiality is expected to be maintained at all times subsequent to service to the Corporation. Each director, officer, and key employee shall annually complete a confidentiality agreement. Notwithstanding the dispute resolution provision contained in Addendum B, the Corporation may enforce this provision as it deems

appropriate (including mediation and arbitration at its option), and it shall be entitled to recover attorneys' fees and costs against those found liable for violating this provision.

## ARTICLE VI. MEETINGS OF THE BOARD OF DIRECTORS

### Section A. Annual Meeting

An annual meeting of the Board of Directors shall be held at such time and place as may be designated by the President in accordance with the notice provisions herein below, for the purpose of approving an annual budget, for election of directors and officers, and for the transaction of such other business as may come before the meeting.

### Section B. Special Meeting

Special meetings of the Board of Directors may be called by, or at the request of, the President or any two directors. The person or persons authorized to call special meetings of the Board of Directors may fix any place for holding any special meeting of the Board of Directors called by them.

### Section C. Notice

#### 1. Time

Except as otherwise provided herein, written notice of any meeting of the Board of Directors shall be delivered not less than five (5) days nor more than sixty (60) days prior to the date of the scheduled meeting.

#### 2. Email

Notice requirements may be satisfied by sending an email communication in a timely manner to the director's email address on the Corporation's records. Telephone communications may be useful for establishing the time and place of meeting but shall not be used in lieu of the email notice. At any duly convened meeting of the Board a resolution may be approved concerning future meetings of the Board. Timely emailing of the Board minutes to each director may qualify as notice of the next meeting of the Board if the minute concerning the meeting is clearly set forth and concise in its composition.

#### 3. Extraordinary Notice

Notice of no less than twenty days shall be provided for meetings of directors called for the purposes of amending the bylaws or removing a director as required under applicable Illinois law.

#### 4. Waiver

Notice of any meeting of the Board of Directors may be waived in writing or electronically, by the person or persons entitled to the notice either before or after the time of the meeting. The

attendance of a director at any meeting shall constitute a waiver of notice of such meeting except where a director attends a meeting for the expressed purpose of objection to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted, nor the purpose of any regular or special meeting of the Board of Directors, need be specified in the notice or waiver of such meeting, unless specifically required by law or by these bylaws.

### Section D. Quorum

A majority of the directors then in office shall constitute a quorum for the transaction of the business at any meeting of the Board of Directors, provided that if fewer than half of the directors are present at the said meeting, a majority of the directors present may adjourn the meeting to another time without further notice.

### Section E. Manner of Acting

The act of a majority of the directors present and voting at a duly convened meeting shall be the act of the Corporation unless the act of a greater number is required by statute, these bylaws, or the Articles of Incorporation. Directors may not vote by proxy or under any other power of attorney.

### Section F. Telephone Meeting

Any meeting of the directors may be conducted in simultaneous multiple locations if the various locations are effectively connected by telephonic or other communications equipment, including videoconference. Directors or non-director committee members may participate in and act at any meeting of the Board or committee through the use of such equipment, provided all persons participating in the meeting can communicate with each other simultaneously. Participation in such meeting shall constitute attendance and presence in person at the meeting of the person or persons so participating.

### Section G. Action Without a Meeting

Any action which may be taken at a meeting of the Board of Directors or a committee thereof, may be taken without a meeting if a consent in writing setting forth the action so taken shall be approved in writing by all of the directors or all of the members of such committee entitled to vote with respect to the subject matter thereof, as the case may be. The consent shall be evidenced by one or more written approvals, each of which sets forth the action taken and provides a written record of approval. Consent provided by reply email from a director's email address shall be sufficient to constitute written consent. All the approvals evidencing the consent shall be delivered to the Corporation's Secretary to be filed in the Corporation's records. The action taken shall be effective when all the directors or the committee members, as the case may be, have approved the consent unless the consent specifies a different effective date.

# ARTICLE VII. COMMITTEES

## Section A. Appointment of Committees and Committee Members

The Corporation's Board of Directors shall have the power to appoint standing and special committees by a resolution of the Board. The resolution of the Board creating the standing or special committee shall specify:

1. the task(s) assigned to the committee;
2. whether or not the committee has authority to act on behalf of the Corporation (see Sections B & C of this Article); and
3. the duration of the committee, which may be generalized to a period necessary to bring the matter to full resolution.

Unless otherwise designated by the Board, all committee members shall be appointed for one (1) year terms by the Board of Directors beginning each year at the Board's Annual Meeting. The Board shall also designate an individual to serve as chair of the committee.

## Section B. Committees with Corporate Authority

The Board of Directors may appoint committees that are delegated certain authority generally reserved to the Board, provided such authority is not prohibited for delegation under the Act. Committees with corporate authority must have two or more directors; a majority of its membership must be directors; and all the committee members shall serve at the pleasure of the Board.

## Section C. Committees Without Corporate Authority

The Board of Directors may appoint committees without corporate authority. These committees will generally be responsible for investigating, reporting, and advising the Board on certain activities and program as well as making recommendations to the Board of Directors or officers for approval. The committees shall not have authority to bind the Corporation. For purposes of clarity, committees without corporate authority should be identified as advisory boards, commissions, task forces, or similar names. These committees may be composed of persons appointed by the Board of Directors for specific skills and need not be directors or officers of the Corporation.

## Section D. Committee Meetings

Meetings of any committee may be called by the President of the Corporation, the chairperson of the committee, or a majority of the committee's voting members. Notice of the time and place of any meeting of a committee shall be given at least three (3) days prior to the meeting, and otherwise in accordance with Article VI, Sections C(2) and C(3).

## Section E. Resignation and Removal

Any member of a committee may resign at any time by giving written notice to the chairperson of the committee or to the Secretary of the Corporation. Such resignation, which may or may not

be made contingent on formal acceptance, shall take effect on the date of receipt or at any later time specified therein. Any member of a committee may be removed at any time by resolution adopted by a majority of the Board of Directors.

## Section F. Quorum and Manner of Acting

Unless otherwise provided in the resolution of the Board designating a committee, a majority of a committee's members shall constitute a quorum. The act of a majority of committee members present at a meeting with a quorum shall be the act of the committee. A committee may otherwise conduct its meetings and act in accordance with Article VI, Sections F and G.

## ARTICLE VIII. OFFICERS AND AGENTS

### Section A. Officers

The officers of the Corporation shall consist of a President, a Vice President, a Secretary, and a Treasurer. Such other officers and assistant officers and agents as may be deemed necessary may be elected or appointed by the Board. Any two (2) or more offices may be held by the same person, except that the offices of President and Secretary may not be held by the same person concurrently. Directors of the Board may simultaneously serve as officers, but directorship shall only be a required qualification for the President and Vice President. The Secretary and Treasurer of the Corporation may or may not be directors.

### Section B. Election and Term of Office

The officers of the Corporation shall be elected by the Board for a term of one (1) year at the annual meeting of the Board of Directors. If the election of officers shall not be held at such meeting, such election shall be held as soon thereafter as conveniently may be. Each officer shall hold office until the first of the following to occur: until his or her successor shall have been duly elected and shall have qualified; until his or her death or disability; until he or she shall resign in writing; or until he or she shall have been removed in the manner hereinafter provided. Election or appointment of an officer or agent shall not in itself create contract rights.

### Section C. President

The President shall be a director and may serve as the chief executive officer of the Corporation. Subject to the control of the Board, the President shall preside at all meetings of the Board as chair of the Board. The President may sign documents on behalf of the corporation, as provided below in Article IX. The President shall discharge all duties incident to the office of President and such other duties as may be assigned to him or her by the Board from time to time.

### Section D. Vice-President

The Vice-President shall exercise all of the functions of President during the absence or disability of the President. He or she shall have such powers and discharge such duties as may be assigned to him or her from time to time by the Board.

**Section E. Secretary**

The Secretary shall:

1. be responsible for the keeping of the minutes of the Board and committee meetings in one or more books provided for that purpose;
2. see that all notices are duly given in accordance with the provisions of these bylaws or as required by law;
3. be custodian of and maintain copies of all corporate records, including all notices and voting records, whether in electronic or paper form; and
4. in general, discharge all duties incident to the office of Secretary and such other duties as from time to time may be assigned to him or her by the President or by the Board.

**Section F. Treasurer**

The Treasurer shall:

1. monitor the financial books of the Corporation;
2. keep regular books of account and make them available for inspection at all times to the directors of the Corporation;
3. render to the Board from time to time as may be required of him or her, an account of the financial condition of the Corporation; and
4. in general, discharge all duties incident to the office of Treasurer, and such other duties as may be assigned to him or her by the President or by the Board.

**Section G. Delegation of Authority**

In case of the absence of any officer of the Corporation, or for any other reason that it may deem sufficient, the Board may either delegate the powers or duties of such officer to any director or employee of the Corporation, for the time being, or may eliminate some or all of such powers or duties of such officer, provided a majority of the Board concurs therein.

**Section H. Removal**

Any officer or agent may be removed by the Board of Directors whenever, in its judgment, the best interest of the Corporation shall be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

## ARTICLE IX. FINANCIAL POLICIES

**Section A. Fiscal Year**

The fiscal year of the Corporation shall be from January 1st to December 31st.

**Section B. Sale of Assets**

A sale, lease, exchange, mortgage, pledge or other disposition of property or assets of the Corporation outside the normal course of business may be made by the Board upon such terms and conditions and for such considerations, which may consist in whole or in part of the money or property, real or personal, as may be authorized by the Board; provided, however, that a sale, lease, exchange or other disposition of all or substantially all of the property and assets of the Corporation shall be authorized only upon receiving the vote of two-thirds of the directors in office.

**Section C. Contracts**

The President may sign contracts with another officer of the Corporation provided, however, that the Board may authorize him or any other officer or officers, agent or agents, to enter into any contracts or execute and deliver any instrument in the name of and on behalf of the Corporation, individually or together, and such authority may be general or confined to specific instances.

**Section D. Loans**

No loans shall be contracted on behalf of the Corporation and no evidence of indebtedness shall be issued in its name unless authorized by a resolution of the Board. Such authority may be general or confined to specific instances.

**Section E. Checks, Drafts, Etc.**

All checks, drafts or other orders for the payment of money, notes or other evidence of indebtedness issued in the name of the Corporation, shall be signed by such officer or officers, agent or agents of the Corporation and in such manner as shall from time to time be determined by resolution of the Board.

**Section F. Deposits**

All funds of the Corporation not otherwise employed shall be deposited from time to time to the credit of the Corporation in such banks, trust companies or other depositories as the Board may select.

**Section G. Gifts**

The Board of Directors or the President may accept on behalf of the Corporation any contribution, gift, bequest, or devise for the general purposes or for any special purpose of the Corporation.

## ARTICLE X. INDEMNIFICATION OF DIRECTORS AND OFFICERS

To the fullest extent permitted by law, the Corporation shall have powers to indemnify any director, officer, or former director or officer of the Corporation, or any person who may have served at its request as a director or officer of another entity or joint venture, whether for profit

or not-for-profit, against expenses actually and necessarily incurred by him or her in connection with the defense of any action, suit, or proceeding in which he or she is made a party by reason of being or having been such director or officer, except in relation to matters as to which he or she shall be adjudged in such action, suit, or proceeding to be liable for gross negligence or intentional misconduct in the performance of a duty.

Such indemnification shall not be deemed exclusive of any other rights to which such director or officer may be entitled, under agreement, or a recommendation of the Board of Directors, or otherwise. No indemnification or advancement of expenses shall be made under this Article if such indemnification or such advancement of expenses would be inconsistent with: (i) the provisions of Section 501(c)(3) or Section 4958 of the Code or the Treasury Regulations promulgated thereunder; (ii) a provision of the Corporation's Articles of Incorporation or these Bylaws; (iii) applicable state law; or (iv) a resolution of the Board of Directors or other proper corporate action, in effect at the time of the occurrence of the event giving rise to the alleged cause of action asserted in the threatened or pending action or proceeding, which prohibits or otherwise limits such indemnification or such advancement of expenses.

## ARTICLE XI. CORPORATE LIMITATIONS

### Section A. Distributions

The Corporation, being organized exclusively for religious, charitable, and educational purposes, may make distributions to organizations and individuals in furtherance of its corporate purposes and in accordance with Section 501(c)(3) of the Code.

### Section B. Prohibition Against Private Benefit and Inurement

No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to its directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article III above.

### Section C. Political Activity

No substantial part of the activities of the Corporation shall be to attempt to influence legislation by propaganda or otherwise, and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office.

### Section D. Other Prohibitions

The Corporation shall not carry on any other activities not permitted to be carried on:

1. under the Act or other applicable law;
2. by a corporation exempt from federal income tax under Section 501(c)(3) of the Code; or
3. by a corporation, contributions to which are deductible under Section 170(c)(2) of the Code.

## Section E. Dissolution

Upon dissolution of the Corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the Corporation, dispose of all of the assets of the Corporation, exclusively for the purposes of the Corporation in such manner, or to such organization or organizations organized and operated exclusively for religious, charitable, or educational purposes, as shall at the time qualify as an exempt organization or organizations under Section 501(c)(3) of the Code as the Board of Directors shall determine. Any such assets not so disposed of shall be disposed of by the appropriate court of law of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for exempt purposes.

# ARTICLE XII. MISCELLANEOUS

## Section A. Books and Records

The Corporation, at its offices, shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its Board and committees, and shall keep a record of the names and addresses of all Board and committee members. All books and records of the Corporation may be inspected by a director, or his agent or attorney, at any reasonable time.

## Section B. Amendments

The Articles of Incorporation and these Bylaws may be altered, amended or repealed, and new articles and bylaws may be adopted by a vote of two-thirds of the Directors. Notice of the proposed amendment (including the suggested text of the change) shall be given in writing to all directors per the requirements of Article VI, Section C herein, and shall identify the persons proposing the amendment.

## Section C. Corporate Acquisition, Consolidation, Merger, or Dissolution

In the event of a proposed acquisition, consolidation, merger or dissolution, the Board of Directors shall adopt a plan setting forth the terms and conditions of the proposed transaction and such other provisions with respect to the proposed transaction as are deemed necessary under applicable state law or desirable. No acquisition, merger, or other dissolution shall be adopted unless approved by a vote of two-thirds of the Board of Directors.

## Section D. Conflict of Interest Policy

Attached at Addendum A is the Corporation's Conflict of Interest Policy, which shall govern all actions and decisions by the Corporation's Board of Directors.

## Section E. Dispute Resolution Policy

Attached to these Bylaws as Addendum B is the Dispute Resolution Policy, which shall be the policy of the Corporation. Provided, however, that with respect to breaches of confidentiality as

required herein, the Corporation may at its option protect its interests through injunctive and other judicial relief available through litigation.

### Section F. Waiver or Reduction of Fees

The Corporation, being organized exclusively for religious, charitable, and educational purposes under Illinois law, shall strive to make its charitable services and programs available to the appropriate general public without undue obstacles to access. It is the general policy of the Corporation that any fees or charges associated with the tax-exempt services and programs of the Corporation shall be waived or reduced in accordance with each recipient's ability to pay. The administrative staff shall have the necessary discretion to make such waivers or reductions when appropriate to ensure the maximum distribution of the Corporation's charitable services and programs.

### Section G. Seal

The Corporation shall not maintain a corporate seal.

### Section H. Inconsistencies with Articles of Incorporation

If any provision of these bylaws is inconsistent with a provision of the Corporation's Articles of Incorporation, as amended from time to time, the Articles of Incorporation shall govern.

### Section I. Severability

The invalidity or unenforceability of any provision in these bylaws shall not affect the validity or enforceability of the remaining provisions.

## CERTIFICATION OF ADOPTION OF BYLAWS

The undersigned, being the duly elected Secretary of Young Americans Against Socialism, an Illinois not for profit corporation, hereby certifies that the attached bylaws were adopted by the official act of the Board of Directors and the same do constitute the Bylaws of the Corporation.

Dated this _____ day of _____, 20_____

_____

Secretary

## ADDENDUM A. CONFLICT OF INTEREST POLICY

### Article I. Purpose

The purpose of this Conflict of Interest Policy is to protect the Corporation and its tax-exempt status when the Corporation is contemplating entering into a transaction or arrangement that involves certain individuals that have a special relationship with the Corporation, either directly or through family or business relationships. The law imposes a fiduciary duty on the Corporation's directors, which carries with it a broad and unbending duty of loyalty to the Corporation. The directors have the responsibility of administering the Corporation's affairs honestly and prudently, and of exercising their best care, skill, and judgment for the Corporation's sole benefit. As such, they shall exercise the utmost good faith in all transactions involved in their duties, and they shall not use their positions with the Corporation or knowledge gained therefrom for improper private benefit. The interests of the Corporation must be the first priority in each director's decisions and actions. This Policy is intended to supplement but not replace applicable laws governing conflicts of interest for nonprofits.

### Article II. Definition of Interested Person and Conflict of Interest

#### A. Interested Person

An "Interested Person" shall include:

1. any director, officer, member of a committee with board-delegated power, or key employee of the Corporation (an employee with decision-making authority);
2. a substantial contributor to the Corporation;
3. any family member of the individuals described above[1]; and
4. any corporation, trust, or other entity in which persons described above hold more than 35 percent of the total combined voting power.

#### B. Conflict of Interest

A "Conflict of Interest" is any transaction or arrangement involving the Corporation, which directly or indirectly benefits an Interested Person.

### Article III. Annual Statements

#### A. Annual Affirmations

Each director, officer, member of a committee with board-delegated power, or key employees of the Corporation shall annually sign a statement which affirms that such person:

1. has received a copy of this Policy;
2. has read and understands the Policy;

---

[1] A person's family is limited to: (i) Spouse; (ii) Brothers or sisters (by whole or half-blood); (iii) Spouses of brothers or sisters (by whole or half-blood); (iv) Ancestors; (v) Children; (vi) Grandchildren; (vii) Great grandchildren; and (viii) Spouses of children, grandchildren, and great grandchildren.

3. has disclosed on the annual statement all known potential Conflicts of Interest that may arise, or have arisen; and
4. agrees to comply with the Policy.

### B. Recordkeeping

The Corporation's Board of Directors shall maintain a record of other known potential Conflicts of Interest that may arise, or have arisen with Interested Persons not otherwise disclosed under Section A of this Article.

## Article IV. Procedures for Addressing Conflicts of Interest

### A. Loyalty to the Corporation

The Corporation must be careful in undertaking transactions with Interested Persons to ensure that the transaction is in the best interest of the Corporation and that the Interested Person is not receiving an improper private benefit. This may include, but is not limited to, those transactions involving Interested Persons with decision-making authority in the Corporation.

### B. Duty to Disclose and Recuse from Discussion and Vote

Interested Persons with decision-making authority in the Corporation have a duty to disclose the existence of a potential Conflict of Interest in any proposed transaction or arrangement under consideration by the Corporation. After disclosure of the interest and all material facts related thereto by the Interested Person, including any initial questioning by the independent individuals on the board or committee, the Interested Person with the Conflict of Interest shall recuse himself or herself and is not permitted to participate in any discussion or vote, on the transaction or arrangement.

### C. Investigation and Due Diligence Analysis

The Corporation has a duty to investigate alternatives to any proposed transaction or arrangements involving Interested Persons to determine whether the proposed action is in the best interest of the Corporation. If appropriate, the chairperson may appoint a disinterested person or committee to perform this investigation. After exercising due diligence, the board or committee shall determine whether the Corporation can obtain a more advantageous transaction or arrangement with reasonable efforts from a person or entity that would not give rise to a Conflict of Interest.

### D. Decision-Making Process

If a more advantageous transaction or arrangement is not reasonably attainable under circumstances that would not give rise to a Conflict of Interest, the board or committee shall determine by a majority vote of the disinterested directors whether the transaction or arrangement is in the Corporation's best interest and whether the transaction is fair and reasonable to the Corporation, and shall make its decision as to whether to enter into the transaction or arrangement in conformity with such determination.

### E. Contemporaneous Reporting

The acts taken to comply with this Policy, including the disclosure of the Conflict of Interest, investigation thereafter, explanation of the decision-making process, including the explanation of why the proposed action is or is not in the best interest of the Corporation, and the individuals voting on the proposed transaction, shall be contemporaneously recorded in writing by the Corporation in the minutes of the meeting, together with any comparability data or other supporting documentation.

## Article V. Violations of the Conflicts of Interest Policy

If the board or committee has cause to believe that a director, officer, member of a committee, or key employee has failed to disclose actual or possible conflicts of interest, it shall inform the individual of the basis for such belief and provide an opportunity to explain the alleged failure to disclose.

If, after hearing the response and making such further investigation as may be warranted in the circumstances, the independent board or committee determines that he or she has in fact knowingly failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action, including suspension or removal from his or her position with the Corporation.

## Article VI. Compensation and Avoiding Excess Benefits

### A. Duty to Recuse for Compensation

An Interested Person who receives compensation, directly or indirectly, from the Corporation for services, whether as an employee or an independent contractor, is precluded from voting on matters pertaining to his/her compensation or any benefits provided by the Corporation to the individual.

### B. Review of Compensation Arrangements

All compensation arrangements between the Corporation and an Interested Person shall be reviewed at least every other year by the Corporation to assure that compensation is reasonable and is the result of arms-length bargaining. Decisions regarding compensation shall be made only after the Board or an appropriate independent committee examines relevant financial information regarding compensation received by similarly situated individuals for similar services performed. A copy of such relevant comparable financial information, including a description of how the data was obtained, shall be maintained as a part of the records of board or appropriate committee making such compensation decision.

# ADDENDUM B. DISPUTE RESOLUTION POLICY

In the event a dispute may arise between directors, officers, executive staff, or committee members regarding any matter under these Bylaws or otherwise affecting the Corporation, and except as specifically provided otherwise in the Corporation's Bylaws regarding confidentiality, the parties to the dispute shall submit the circumstances and issues in dispute for mediation or arbitration as follows.

## Article I. Mediation

1. The parties shall promptly retain a mutually-agreed upon neutral mediator. The goal of the mediation process and the mediator is to bring about an amicable, voluntary resolution of the dispute, and the parties shall make a good faith effort to work with one another and the mediator to effect such a resolution of their dispute.
2. Such mediator shall be retained from a reputable source or organization such as the Center for Conflict Resolution (located in Chicago, Illinois) or JAMS End Dispute.
3. In the event that the parties cannot agree on a mediator, then each party shall select a mediator. The two individually selected mediators shall jointly identify a third mediator, who then will be responsible for facilitating a binding resolution of the parties' dispute at a mutually agreed upon time and place.
4. The mediation shall be conducted in accordance with the rules of the organization from which the mediator who facilitates the parties' dispute is retained. Notwithstanding the foregoing, any and all mediation conferences shall be private and all communications therein confidential unless the parties otherwise agree.
5. The fees and costs of the mediator who facilitates the mediation shall be borne equally by the parties. The fees and costs of any mediator whom a party retains individually shall be borne by that party.

The mediator shall have sole discretion to make the determination that the parties have reached an impasse and no voluntary resolution will be forthcoming.

## Article II. Arbitration

If the parties cannot reach a resolution through mediation, and the mediator makes the determination that the parties have reached an impasse and no resolution will be forthcoming, the parties shall submit the matter for arbitration.

1. The parties may agree on a single arbitrator.
2. Alternatively, each party to the dispute shall select an impartial, disinterested person to be part of the arbitration. The persons so selected shall appoint one or more additional person(s) as may be necessary to provide an odd numbered arbitration panel and such additional person(s) shall be similarly qualified as to all of the parties in conflict.
3. When the *singlllle* arbitration or arbitration panel is identified, the matter shall proceed to binding arbitration.
4. Compensation for the arbitration shall be paid equally by the parties.

These methods shall be the sole legal remedy for any controversy or claim arising out of this Agreement. No party shall bring any dispute under these Bylaws to any court of law or chancery

except to enforce a mediation agreement or arbitration decision and except as otherwise provided in the Confidentiality provision of the attached Bylaws ("Dispute Resolution Policy"). Notwithstanding anything to the contrary, this Dispute Resolution Policy shall be subject to the approval of any insurance carrier providing coverage for the Corporation.